
DA 09-0619

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 77N

IN THE MATTER OF:

R.R.A.K.,

     A Youth in Need of Care.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DN-06-023(A)
Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    Johnna K. Baffa, Attorney at Law, Missoula, Montana

    For Appellee:

    Hon. Steve Bullock, Montana Attorney General; Sheri K. Sprigg,
Assistant Attorney General, Helena, Montana

    Ed Corrigan, Flathead County Attorney; Katie Schulz, Deputy County
Attorney, Kalispell, Montana

Submitted on Briefs:  March 10, 2010

Decided:  April 13, 2010

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2006, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Birth father T.K. appeals from findings of fact, conclusions of law, and order of the Eleventh Judicial District Court, Flathead County, terminating parental rights to 14-year-old daughter, R.R.A.K. (R.R.K.). We affirm.

¶3 T.K. raises the following issues on appeal:

¶4 Whether sufficient evidence supports the District Court's finding that R.R.K. was a youth in need of care.

¶5 Whether the District Court erred in concluding that the State met the statutory criteria to terminate the father's parental rights.

¶6 Whether the District Court abused its discretion by finding it was in R.R.K.'s best interest for her father's rights to be terminated.

¶7 R.R.K. was adjudicated a Youth in Need of Care on August 11, 2006, because T.K. left her with relatives while he looked for a job and home, but failed to come back for her in a timely manner. There were also allegations that T.K. may have sexually assaulted R.R.K. and concerns that she was acting out sexually in her foster home.

Additionally, T.K. never took R.R.K. to a dentist, and when her foster parents did so, the dentist discovered that she had teeth that were rotting and very painful for her.

¶8     While R.R.K. was in foster care, the court approved a treatment plan for T.K. on December 29, 2006. R.R.K. began staying with her father on a trial home basis at the end of July 2008. In November 2008, T.K. and R.R.K. were evicted from their trailer when T.K. failed to pay rent, so they moved to a shelter while T.K. looked for stable employment and new housing. On December 1, 2008, T.K.'s disruptive behavior and intoxication led to their eviction for violating the shelter's zero tolerance policy. R.R.K. returned to foster care, while T.K. developed his second treatment plan, approved by the court on January 23, 2009. T.K. failed to complete a chemical dependency evaluation, and although he admitted he was an alcoholic, he believed it was appropriate to continue drinking. T.K. was inconsistent in completing required UA testing and attending AA groups. T.K. refused to disclose contact information to social workers, making communication nearly impossible. T.K. had not been employed for over a year by the time of the termination hearing on September 14, 2009. R.R.K. was recently placed with her maternal aunt and uncle, and has a maternal aunt in Nevada who is willing to provide a permanent home for her.

¶9     This Court reviews a district court's decision to terminate parental rights for abuse of discretion. *Matter of D.B. and D.B.*, 2007 MT 246, ¶ 16, 339 Mont. 240, 168 P.3d 691. In reviewing for abuse of discretion, we consider "whether the trial court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice." *Matter of D.B.*, ¶ 16. Before terminating

3

parental rights, a district court must make specific factual findings addressing applicable statutory requirements. *Matter of D.B.*, ¶¶ 17-18. We review these findings of fact to determine whether they are clearly erroneous and conclusions of law to determine whether they are correct. *Matter of D.B.*, ¶ 18.

¶10 *Whether sufficient evidence supports the District Court's finding that R.R.K. was a youth in need of care.*

¶11 Montana law defines "youth in need of care" as "a youth who has been adjudicated or determined, after a hearing, to be or to have been abused, neglected, or abandoned." Section 41-3-102(34), MCA. "Child abuse or neglect" is defined to include "actual physical or psychological harm to a child or substantial risk of physical or psychological harm to a child by the acts or omissions of a person responsible for the child's welfare." Section 41-3-102(7)(b)(i)(A), MCA.

¶12 R.R.K. was adjudicated a youth in need of care following a hearing on August 11, 2006. The District Court found:

> Based upon the ongoing criminal investigation, the birth-father's lack of demonstrated stability or willingness to work with the Department [of Public Health and Human Services, Child and Family Services Division], the birth-father's failure to attend to the child's medical needs or ability to provide for her basic needs (shelter, food, safety, school, etc.), the Court finds that the above-named child is an abused or neglected child pursuant to § 41-3-102, MCA, and finds that Adjudication of the child as a Youth in Need of Care is appropriate and supported by the facts set forth during the hearing.

¶13 T.K. argues that no credible evidence supports finding that R.R.K. was at risk of suffering any physical or psychological harm by minimizing the risks and harms that R.R.K. faced while in his care and contrasting these facts with extreme examples from

4

our case law. Given the facts discussed above, the court's finding was not clearly erroneous.

¶14 *Whether the District Court erred in concluding that the State met the statutory criteria to terminate the father's parental rights.*

¶15 Montana law provides that a court may terminate parental rights upon clear and convincing evidence that (1) the child has been adjudicated a youth in need of care, (2) an appropriate court-approved treatment plan has not been complied with or has not been successful, and (3) the conduct or condition rendering the parent unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(f), MCA.

¶16 T.K. argues that there was no substantial evidence to support the District Court's finding that the conduct or condition rendering him unfit was unlikely to change within a reasonable time. Citing *Matter of K.F.L. & N.L.*, 275 Mont. 102, 910 P.2d 241 (1996), the court noted that "[t]he parents' history is relevant to the determination that their ability to parent is unlikely to change in a reasonable period of time." The District Court found that giving T.K. additional time would be contrary to R.R.K.'s best interest because "she needs to know where she will be living, sleeping, and going to school and that she will not [be] moving or forced to leave. RRK needs permanency to allow her to succeed." The court noted that additional time would be unproductive, given that R.R.K. had been in foster care for nearly three years, and T.K. only demonstrated that he could care for her in a relatively stable environment for about four months. The court further noted that in the nine months prior to the termination hearing, T.K. was unable to find a job or home and failed to address his chemical dependency.

5

¶17 T.K. argues that nothing in the record indicates that his alcohol use was "excessive" or that it affected his "ability to care and provide for the child," which a court considers under § 41-3-609(2)(c), MCA. The court specifically noted that "in defense of his continued alcohol use [T.K.] stated that 'beer relieves stress,' noting the last few years have been stressful." This factor, together with T.K.'s continued inability to consistently provide R.R.K. with food, shelter, and medical care for more than three years, provides sufficient evidence to support the District Court's finding that the conduct or condition of T.K. rendering him unfit to parent is unlikely to change within a reasonable time. The District Court order meets the statutory requirements and T.K. fails to demonstrate that the court's findings are clearly erroneous.

¶18 *Whether the District Court abused its discretion by finding it was in R.R.K.'s best interest for her father's rights to be terminated.*

¶19 T.K. argues that the District Court abused its discretion by finding that R.R.K.'s best interests were served by terminating her father's rights, rather than granting long-term custody to the Department. T.K. suggests that apart from his poverty, there have never been any allegations that R.R.K. suffered actual physical or psychological harm or was even at risk of such harm while in his care.

¶20 The District Court found:

> RRK deserves permanency. It has been over 3 years since the Department first intervened in RRK's life and she deserves to know she has a stable, reliable, safe and loving home to grow up in. She cannot wait any longer for her father to demonstrate that he can provide a stable, secure and safe home. . . . It is in RRK's best interest to approve the Permanency Plan of adoption to give her the stability and permanency she deserves to develop in a nurturing/safe environment.

Additionally, the court noted that R.R.K. had been in foster care for 18 of the most recent 22 months, thus it is presumed to be in the best interest of R.R.K. to terminate parental rights pursuant to § 41-3-604(1), MCA. Importantly, R.R.K. expressed a desire for permanency and interest in living with her aunt, while T.K.'s efforts to pursue visitation were minimal.

¶21 T.K.'s broad allegations do not demonstrate that the District Court abused its discretion by finding that R.R.K.'s best interests were served by terminating her father's rights. We conclude that the District Court did not abuse its discretion in terminating T.K.'s parental rights.

¶22 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our 1996 Internal Operating Rules, as amended in 2006, which provides for memorandum opinions. It is manifest on the face of the briefs and the record that the appeal is without merit because the issues are ones of judicial discretion and there clearly was not an abuse of discretion.

¶23 Affirmed.

/S/ MIKE McGRATH

We concur:

/S/ MICHAEL E WHEAT
/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ BRIAN MORRIS

7